Ellias C. HOPPENFELD, Appellant,

v.

John Herbert CROOK, Appellee.

No. 12058.

Court of Civil Appeals of Texas, Austin.

July 18, 1973.

Rehearing Denied Aug. 22, 1973.

---

James A. Brady, Eskew, Brady & Womack, Austin, for appellant.

Douglass D. Hearne, Stayton, Maloney, Black, Hearne & Babb, Austin, for appellee.

PHILLIPS, Chief Justice.

This is an action for fraud. Appellee Crook, plaintiff below, brought suit alleging that he was induced by fraudulent misrepresentations of appellant, among others, to enter into a franchise agreement with Law Research Service Inc., a New York corporation. Appellant, a resident of New York, timely filed a special appearance, Rule 120a Texas Rules of Civil Procedure which was overruled. Appellant appeared in person or by counsel at neither the hearing on his special appearance nor the trial on the merits. Trial was to the court, and judgment awarding both compensatory and exemplary damages was entered for plaintiff against two individual defendants, Hoppenfeld and Thatcher. Hoppenfeld alone has perfected an appeal to this Court.

Appellant, Hoppenfeld, is the president of, and majority stockholder in, Law Research Service Inc., a New York corporation in the business of computerizing legal research. The operation of the corporation was essentially a two step process. The first step was the extraction of information from published opinions and programming of same into the corporation's computer located in New York. The second phase was to be the sale of the service to attorneys throughout the country. The service provided, then, was not limited to the research itself, but included also the computerage speed with which the results of that research were to be made available to subscribing lawyers.

In order to provide for the marketing of this service, the corporation undertook to sell franchises to individuals located throughout the country. It was to be the function of these persons, known as directors, to deal with attorneys located within their respective areas. The director's duties included both the solicitation of new subscriptions and the servicing of accounts of subscribing attorneys. Appellee Crook entered into one of these franchise agreements and became thereby the director of an area composed of the Texas counties of Travis and Bexar.

As noted above, this appeal involves a tort action, rather than an action on the contract. Nonetheless, the franchise agreement entered into between Crook and Law Research Service Inc., is of some significance to the suit. Pursuant to the terms of that agreement the purchase price of the franchise was paid by Crook in three installments, totaling $15,500. The first such installment was paid in March, 1966, when the contract was executed. The final two installments (May and June, 1966) came on the heels of a New York seminar attended by appellee in May of 1966, sponsored by Law Research Service for the purpose of training its new directors. It was during the course of this seminar that appellant is alleged to have made certain representations to appellee regarding the research techniques employed by the corporation; representations which form the basis of appellee's fraud action.

The record indicates that the venture described above was something less than an unqualified success. Appellee claims losses substantially in excess of his $15,500 investment, which have been offset by virtually no returns whatsoever. For its part, Law Research Service Inc., is currently in bankruptcy.

Plaintiff's original petition was filed in October, 1967, naming as parties defendant Law Research Service Inc., and several individuals, including Hoppenfeld. The petition sought rescission and damages, based upon the franchise agreement. Service was obtained on all the nonresident defendants, including Hoppenfeld and Law Research Service pursuant to art. 2031b V.A.T.S. These nonresidents properly filed special appearances under Rule 120a Tex.R.Civ.P. On May 22, 1969, the special appearances of Hoppenfeld and Law Research Service were overruled after a hearing at which neither appeared. The case was subsequently heard on the merits, and, upon the jury's answers to 42 issues

submitted, judgment was entered for plaintiff on July 17, 1970, against both appellant and Law Research Service.

This judgment of July 1970 was, however, short lived. On defendant's motion for new trial, the court, in September, 1970, set the judgment aside and awarded defendants a new trial. The period following this order granting the new trial has been characterized by a great deal of legal skirmishing between the parties. At some point in this period, a stay order was issued by the United States District Court for the Southern District of New York, staying all suits against Law Research Service Inc., pending the outcome of the bankruptcy proceedings mentioned above. In October, 1972, on motion of plaintiff the action against Law Research Service was severed from that against Hoppenfeld and another individual defendant, Thatcher.

Upon severance, plaintiff pursued his claim against Hoppenfeld and Thatcher with the filing of plaintiff's fourth amended original petition, naming only the above two defendants and alleging fraud rather than rescission. It was upon this petition that plaintiff went to trial and it is from the judgment entered in that trial (November, 1972) that Hoppenfeld has perfected this appeal.

Appellant is before us on 36 points of error which he has grouped for argument. By his first two points appellant asserts error in the trial court's overruling his special appearance filed pursuant to Rule 120a Tex.R.Civ.P. In this connection it is undisputed that appellant is a resident of the State of New York and that the only notice appellant had of this action was by virtue of service of process pursuant to art. 2031b Vernon's Ann.Tex.St. Appellant asserts that he was not amenable to such service, while appellee contends that appellant's special appearance was properly overruled because appellant, having committed a tort in part in Texas, was within the purview of § 4 of art. 2031b V.A.T.S.

Appellee further points out that appellant did not appear at the hearing held on his special appearance, introduced no evidence therein, and therefore failed to carry his burden.

■ At the outset we note that we are in complete agreement with appellee regarding the allocation of the burden in a jurisdiction contest under Rule 120a. The burden of proof and persuasion is on the nonresident contesting the court's jurisdiction. Roquemore v. Roquemore, 431 S.W. 2d 595 (Tex.Civ.App.1968, no writ), Thode: In Personam Jurisdiction and the Appearance to Challenge Jurisdiction in Texas and Elsewhere, 42 Tex.L.Rev. 279 (1964). Moreover, there are indications that, at least where jurisdiction is asserted under § 6 of art. 2031b, plaintiff need only make the proper allegations in the petition, McKanna v. Edgar, 388 S.W.2d 927 (Tex. 1965), to entitle himself to judgment. Parnass v. L & L Realty Corporation, 482 S. W.2d 944 (Tex.Civ.App.1972, error gr.).

■ Nonetheless, this Court is not of the opinion that we are required to overrule appellant's jurisdiction points simply because appellant, the nonresident defendant, failed to present evidence and failed, in fact, even to appear at the hearing on his special appearance. This is so because, whatever his legal duties may have been, appellee, as plaintiff below, adduced evidence on the jurisdiction issue, and it is the duty of this Court, in view of the constitutional attack now levied on the judgment, to review that evidence. Crothers v. Midland Products Co., 410 S.W.2d 499 (Tex.Civ.App.1967, no writ); Bodzin v. Regal Accessories Inc., 437 S.W.2d 655 (Tex.Civ.App.1969, writ ref. n. r. e.).

Reaching appellant's first point of error, it seems that appellant is asserting that art. 2031b should not be construed to reach one in appellant's position. That is, this statute, the so called "long arm" statute, is a "doing business" type statute, meaning that nonresidents are within its reach if they engage in business in Texas. Appellant

apparently is asserting that by no stretch of the imagination could his activities be deemed "doing business" in Texas. This point is not well taken for two reasons.

First, there would seem little room for construction where the statute is addressed specifically and expressly to the facts alleged. In this connection we note that § 4 of the statute sets out a list of activities which will be deemed "doing business" in Texas. Included in this list is " . . . the committing of any tort in whole or in part in this State." As noted above, appellee, as plaintiff, alleged fraud as his cause of action, a two-element tort which is not actionable until relied upon to the detriment of the person to whom the representations were made. Avery Co. of Texas v. Harrison Co., 267 S.W. 254 (Tex. Comm.App.1924, judgment adopted), Wilson v. Jones, 45 S.W.2d 572 (Tex.Comm. App.1932, holdings approved). Appellee alleged below, and asserts here, that although appellant's misrepresentations may have been made in New York, nonetheless appellee's reliance thereon occurred in Texas. In our view appellee has thus alleged a tort committed in part in Texas. See Atkins v. Jones & Laughlin Steel Corporation, 258 Minn. 571, 104 N.W.2d 888 (1960) (construing a statute virtually identical to art. 2031b) and Hull v. Gamblin, 241 A.2d 739 (D.C.App.1968), (construing art. 2031b).

More basically, however, we think that appellant's statutory construction contentions are not well taken for the additional reason that, in our opinion, statutory construction is not the proper inquiry in a case of this nature. As we view the present state of the law, the proper focus of inquiry is that of the constitutional limitation to be placed upon the assertion of jurisdiction over a particular nonresident under the facts of a particular case. The rule is now well entrenched in the federal courts, and we are in agreement, that the reach of art. 2031b is limited only by the United States Constitution. Atwood Hatcheries v. Heisdorf & Nelson Farms, 357 F.2d 847 (5th Cir. 1966); Gurley v. Lindsley, 459 F.2d 268 (5th Cir. 1972); Amco Transworld, Inc. v. M/V Bambi, 257 F.Supp. 215 (S.D.Tex.1971); Jetco Electronic Industries Inc. v. Gardiner, 325 F. Supp. 80 (S.D.Tex.1971). See also Sun-X International Co. Inc. v. Witt, 413 S.W.2d 761 (Tex.Civ.App.1971, writ ref. n.r.e.). To the extent that it raises the question of construction, appellant's first point is overruled.

By the second point of error, and impliedly by the first point also, appellant raises the issue which in our view is controlling in this case: the constitutional permissibility of the assertion of *in personam* jurisdiction over appellant given the jurisdictional facts of the case. Without elaborating on the evolution of the doctrine which has been engrafted upon this determination [1] we need only note here that the constitutional inquiry now is whether a given nonresident defendant had "minimum contacts" with the forum state, within "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, f.n. 1.; O'Brien v. Lanpar Co., 399 S.W.2d 340 (Tex.1966); Collins v. Mize, 447 S.W.2d 674 (Tex.1969); Sun-X International Company Inc. v. Witt, *supra*.

In determining whether appellant had such "minimum contacts" with Texas we are guided by the O'Brien case, *supra* in which the Supreme Court adopting the language used in Tyee Construction Co. v. Dulien Steel Products, Inc., 62 Wash.2d 106, 381 P.2d 245 (1953), indicated that three factors must coincide if jurisdiction

---

1. See Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Reeder Contractors v. Higgins Industries, 265 F.2d 768 (9th Cir. 1959).

over a nonresident is to be constitutionally permissible. First, there must be some purposeful act or transaction consummated by the nonresident in the forum state. Second the cause of action alleged must arise from or be connected with such transaction. Finally, the assumption of jurisdiction "must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and the protections of the laws of the forum state afforded the respective parties, and the basic equities of the situation." 399 S.W.2d 340, 342. To these factors might also be added a determination of whether the forum has some "special interest in granting relief." Hearne v. Dow-Badische Co., 224 F.Supp. 90 (S.D.Tex.1963). It is against the background of these factors that appellant's activities must be examined in order to determine whether appellant had sufficient contacts with Texas to justify the assertion of personal jurisdiction over him by a Texas court.

■ An examination of the record before us indicates that appellant, individually, had the following "contacts" with the State of Texas: (1) As president of the corporation, appellant signed a letter mailed to appellee notifying appellee of the corporation's acceptance of appellee as a director. (April, 1966) (2) At the New York training seminar noted above, appellant addressed the group of new directors, including appellee, and in addition, held a five minute conversation with appellee and one other such fledgling director during which time appellant made certain representations to appellee which are now alleged to have been fraudulent (May, 1966). (3) Appellant wrote appellee a letter apparently in response to appellee's complaints regarding the unreliability of the service. (December, 1966) (4) Appellant sent appellee a Christmas card. (December, 1966) (5) Appellant signed a "progress report" apparently mailed to all the directors, including appellee, indicating the status of the corporation (May, 1967).

It is our opinion that, under these facts appellant lacked sufficient contacts with the State of Texas to justify the assertion of personal jurisdiction over him by a Texas court. The record is replete with additional contacts made by other representatives of the corporation with appellee in Texas, but the contacts outlined above comprise the extent of appellant's personal hand in the dealings. It is therefore of crucial importance that we reiterate the fact that this appeal involves neither the liability of the corporation nor the contractual relationship between appellee and Law Research Service Inc. Indeed, the judgment of the court below recites that "It is the further finding and holding of this Court that all sums of money and damages hereinabove adjudged in favor of the plaintiff, John Herbert Crook, against the defendants, Ellias C. Hoppenfeld, and Gerald Thatcher, are based upon liability arising out of false representations made by the said two defendants."

Against the background of O'Brien v. Lanpar, *supra*, it would appear that, insofar as appellee's cause of action arose from some purposeful act or transaction of appellant individually, such act or transaction did not take place in Texas. Arguably the first letter appellant wrote to appellee would meet this requirement, but that letter was written under the auspices of the corporation and in no way related to appellee's cause of action in fraud. Similarly, it seems that the "progress report" of May, 1967, although it might well be, as alleged by appellee, a *prima facie* indication of the fraudulent nature of prior statements made to appellee, was nonetheless a product of Law Research Service Inc., and not a personal statement made by appellant. We think the Christmas card to be without legal significance in this appeal.

From the record it appears that appellee's actual basis for an action in fraud against appellant individually is derived

from the statements made by appellant at the seminar in New York, and to a lesser extent, the letter mailed by appellant to appellee in response to appellee's complaints regarding the quality of the service that the corporation was offering. As we have already indicated, it *is* our opinion that the statements made in New York by appellant may well be sufficient to give rise to liability in fraud, and, when relied upon in Texas, possibly to confer jurisdiction on a Texas court as well. However, the second of these observations is not a necessary corollary of the first and it is our opinion that such misrepresentations in this case simply do not measure up to the requisite "minimum contacts" to justify the assertion of personal jurisdiction by a Texas court over appellant. Nor does the letter of early December, 1966, in which, as appellee described it, appellant ". . . just attacked me, more or less, for trying to call the situation to his attention" add significantly to the contacts.

In terms of the third requirement set out by the Supreme Court in O'Brien, *supra,* it seems that nothing in the "basic equities of the situation" presented by these facts would militate for the result reached below. It is true, of course, that a Texas court may have a "special interest in granting relief" to this Texas plaintiff who has apparently suffered a substantial loss. At the same time, however, the record does not disclose that appellant was, personally, ever within the State of Texas. Moreover, appellant personally did not solicit appellee's undertaking of the obligations which have proved so costly to him. Nor has appellee attempted in any way to "pierce the corporate veil" and hold appellant as the *alter ego* of the corporation. Additionally, we note that if appellant personally has ever invoked the protections and benefits of the laws of Texas, such does not appear in this record. In short, although there is much evidence in this record that appellee suffered substantial losses as a result of dealings between himself and various nonresidents, there is nothing in the relationship between Crook

and Hoppenfeld to lead this Court to find justification for the assertion of personal jurisdiction over Hoppenfeld where such would otherwise not exist. Appellant's second point of error is accordingly sustained. Hanson v. Denckla, *supra,* fn. 1; O'Brien v. Lanpar, *supra*; Trinity Steel Co. Inc. v. Modern Gas Sales and Service Inc., 392 S.W.2d 861 (Tex.Civ.App.1965, writ ref. n. r. e.); Sun-X International Company Inc. v. Witt, *supra*; Bodzin v. Regal Accessories Inc., *supra.* See also: Collins v. Mize, *supra*; Roberts v. Hodges, 401 S.W.2d 332 (Tex.Civ.App.1966, writ ref. n. r. e.); Nyman v. Schnitzer, 405 S. W.2d 120 (Tex.Civ.App.1966, writ dism.); Crothers v. Midland Products Co., 410 S. W.2d 499 (Tex.Civ.App.1967, no writ); Uvalde Rock Asphalt Co. v. Consolidated Carpet Corp., 457 S.W.2d 649 (Tex.Civ. App.1970, writ ref. n. r. e.).

Having sustained appellant's second point of error, and holding as we do that the court below was without jurisdiction of appellant individually, we find it unnecessary to reach appellant's remaining points of error. The judgment of the trial court is reversed and judgment here rendered dismissing appellee's suit against appellant.

Reversed and Rendered.